# The Fall Creek Coal and Iron Company *versus* Smith.

1. A libel for materials, &c., was filed, and a writ of attachment was issued against five boats, which were attached by the sheriff. *Held*, if the attachment were irregular because joint, as the court had jurisdiction, it was a protection to the sheriff.

2. It was not for the sheriff to determine anything about the irregularity of the writ, but he was bound to serve it.

3. Where a court has jurisdiction of the action, their officers are not responsible for errors in the process.

4. It depends upon the action of the party in interest whether irregular process shall become void; if *inherently* without efficacy it is void as to all persons, whether interested or not.

March 13th 1872. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Bradford county:* No. 292, to January Term 1872.

This was an action of trespass, issued August 29th 1865, by the Fall Creek Coal and Iron Company against J. Monroe Smith, who was sheriff of Bradford county.

The case was referred on the 27th of September 1870, to W.

[Fall Creek Coal & Iron Co. v. Smith.]

H. Jessup, Esq., under the Acts of April 6th 1869 (Pamph. L. 725), and January 20th 1870 (Pamph. L. 85).

Those of the facts necessary to an understanding of the case, which were found by the referee were: that the plaintiffs employed G. M. Hall to furnish materials and build five canal-boats for them, they to advance money to him from time to time as the work progressed, and pay him the balance when delivered; that Hall was not the agent of the plaintiff in the purchase of materials or employment of labor, but was acting for himself; that Roswell Luther on the 8th of July 1865 filed a libel against the five boats; on this libel an attachment was issued, by virtue of which the defendant as sheriff attached the five boats, but did not remove them; on the 19th of July he withdrew the attachment by order of Luther, and notified Hall, and did not further interfere with the boats; the attachment is the trespass complained of in this case; when the attachment was laid, the boats were in the actual possession of Hall, they had not been delivered to the plaintiffs, were unfinished and not ready for delivery; that the boats were subsequently sold at some sale, by whom or as whose property did not appear; they were bid in at the request of the agent of the plaintiffs; the purchaser, at the request of the same agent, sold to E. T. Fox, who finished the boats, and upon payment to him by the agent of the expense of completion, they passed into the possession of the plaintiffs.

The referee reported as conclusions of law, that the plaintiffs had neither possession nor ownership of the boats at the time of the attachment, and could not recover; that under the facts it was immaterial whether the attachment was regular or not; that if the libel were irregular by reason of being a joint one against the five boats, it and the attachment issued on it would be amendable; that if the libel and attachment were irregular, yet the writ was a protection to the sheriff, and the plaintiffs could not recover.

He found for the defendant; judgment was entered on the report January 30th 1872.

The plaintiffs filed exceptions to the referee's report, and removed the record to the Supreme Court.

H. W. Patrick and E. Smith, for plaintiffs in error.—The attachment showed its irregularity on its face; it showed that the court had no jurisdiction over the subject-matter, and no proceedings under it could have validated it: Parkinson v. Manny, 2 Grant 521. Where there is no jurisdiction the officer is a trespasser: Wise v. Withers, 3 Cranch 331; Elliott v. Piersol, 1 Peters 340; Toof v. Butler, 5 Wend. 276; Savacool v. Boughton, 5 Id. 181. If the officer relies on the process for justification, it must in law appear legal on its face: Conner v. Commonwealth, 3 Binney 38–44; Hall v. Moor, Addison 376.

[Fall Creek Coal & Iron Co. v. Smith.]

*Mercur* (with whom was *H. Peet*), for defendant in error, referred to Act of June 13th 1836, Pamph. L. 616, 1 Br. Purd. 94, *et seq.* The irregularity, if any, might have been cured by amendment: Benedict's Admiralty 488; Id. Rule 24, p. 372. The sheriff could not look behind the writ: Billings *v.* Russell, 11 Harris 192, and was not responsible for errors in the process, the court having jurisdiction of the action: Hecker *v.* Jarret, 3 Binn. 404; Allison *v.* Rheam, 3 S. & R. 139; Kingsbury *v.* Ledyard, 2 W. & S. 37; 2 Hilliard on Torts 199–204.

The opinion of the court was delivered, May 13th 1872, by

THOMPSON, C. J.—This case comes before this court, from the findings and judgment of a referee, under the Act of Assembly passed April 6th 1869, entitled "An act authorizing the reference of civil actions in the county of Bradford." While it is nominally entitled a writ of error to the Common Pleas of Bradford county, it is only so, for the court had in fact nothing to do with it, only so far as the appointment of the referee was concerned. The assignments of error are therefore directly upon his adjudications. This is something of a novelty in our Commonwealth, where the common-law forms of judicial proceedings have ever been maintained, with few exceptions, as best calculated to conserve and secure the rights of persons and property. While, however, the law remains in force it is our duty to administer it in its true spirit as nearly as we can.

In so far as the facts are concerned we hold that the finding of the referee stands exactly in place of a verdict of a jury, and that this court has no power to interfere with it: Butterfield *v.* Lathrop (*ante* 225), decided at the last term of this court. In this case my brother Sharswood shows this to be the necessary result of the provisions of the act beyond all doubt. The fourth section provides that the referee "shall state the facts found, and conclusions of law, separately; and his decisions shall be given and may be excepted to and reviewed in like manner as *though tried by the court with a jury, but not otherwise.*" This court has no power over the findings of a jury, as is well known, and by the express terms of the act just quoted, we have the same power, and no more, in reviewing the findings of a referee under the act. The supplement to this Act of 20th July 1870, in no manner alters these provisions. This view of our power of review under the act leaves the finding of all facts by the referee intact, just as if they had been found by a jury, and without power on our part to set it aside, as a court before which a trial had by a jury might do if not satisfied. All controversy, therefore, as to how the canal-boats in question were built by Hall, was ended by the finding of the referee "that Hall was not the agent of the plaintiffs in the purchase of materials, or in the employment of the labor, but was acting for.

[Fall Creek Coal & Iron Co. v. Smith.]

himself." It is only by way of illustration of the idea that we cannot review the facts, that I remark that we have not the witnesses or their testimony before us to enable us to judge whether the referee drew the proper deductions from the testimony before him or not, the testimony itself being legal, it is not assumed as error that there was not evidence in the case of which this conclusion might be predicated—there was abundance, if believed. We choose to examine this case in the light in which it was tried below, but if the proceeding was *in rem*, as we think it was, we do not see very clearly wherein the question of ownership was so material. The lien was good against the boats in whosesoever possession they were.

But passing this—it was strenuously argued that the referee erred in holding that the writ of attachment was a justification of the officer. The foundation of this argument rests on the fact that the attachment was against five canal-boats instead of one. If it had been against one it is not pretended that it would not have been regular and a valid writ. The Act of 13th June 1836 fully authorized it, and for the causes set forth in the attachment, viz. : " for materials furnished and provided in the building, purchasing and equipping said canal-boats." Canal-boats are included in the Act above referred to : Hipple v. Canal-boat Fashion, 3 Grant's Cases 40; Parkinson v. Manny, 2 Id. 521 ( Com. Pl. Allegheny Co.). This was not disputed in the case in hand. Now if there were too many boats included in the attachment, what was this but an irregularity ? and might it not have been waived by the party in interest ? The sheriff was not bound to determine anything about this. He held a writ issued by a court of competent jurisdiction in the premises, and it was not only sufficient for his justification but he was bound to serve it. The authorities to this effect are abundant and consistent. In Hecker v. Jarret, 3 Binn. 404, the principle is thus stated, " where a court has jurisdiction of the action, their officers are not responsible for errors in their process." That accurately decides the matter in hand. The same principle is to be found distinctly announced in Billings v. Russell, 11 Har. 189; so in Kingsbury v. Ledyard, 2 W. & S. 37, and it has become text law; Hilliard on Torts, vol. 2, pp. 199, 200, 201, 202, 203, 204, 205. Many other authorities might be added but are not necessary. The distinction between irregular and void process is very great. It depends upon the *action* of the party interested whether irregular process shall become void or not; but wherever it is inherently without efficacy it is void, not only as to the parties in interest but as to everybody else. It will be seen by these views that we are not able to adopt those taken by the plaintiffs in error on this point, and as we see no error in any other matter or thing in the case, the judgment is affirmed.